UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

Webster Rashada,

        Plaintiff,

v.

Unknown Sheldon et al.,

        Defendants.
_____/

Case No. 1:21-cv-919

Honorable Sally J. Berens

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff previously sought and was granted leave to proceed *in forma pauperis*. (ECF No. 5.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 6.)

Under Rule 21 of the Federal Rules of Civil Procedure, a court may at any time, with or without motion, add or drop a party for misjoinder or nonjoinder. Fed. R. Civ. P. 21. Applying Rules 18, 20, and 21 regarding joinder, the Court will dismiss without prejudice Defendants Burggren, Scott, and Wells.

With regard to Plaintiff's remaining claim, under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se*

complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's First Amendment retaliation claim against Defendant Sheldon. Plaintiff's Eighth Amendment excessive force claim against Defendant Sheldon, however, remains in the case.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Sergeant Unknown Burggren and Correctional Officers Unknown Sheldon, Unknown Scott, and Unknown Wells.

Plaintiff alleges that on November 17, 2020, all prisoners were subjected to COVID-19 testing by the MDOC. (ECF No. 1, PageID.4.) Plaintiff was housed in segregation at the time and, therefore, had to be restrained by being cuffed behind his back. (*Id.*) Plaintiff avers that Defendant Sheldon disliked him, and so when Plaintiff started back toward his cell after testing, Defendant Sheldon "started to become aggressive by yanking and pulling on [Plaintiff's] arm [and] hand." (*Id.*) He then shoved Plaintiff into his cell and said something that Plaintiff could not hear. (*Id.*) Plaintiff turned around to ask what was said, and as the cell door was closing, Defendant Sheldon reached in and struck Plaintiff on the side of his face and head. (*Id.*) After the cell door closed, Defendant Sheldon opened the food slot, and Plaintiff put his hands on the slot to be uncuffed. (*Id.*) Defendant Sheldon "slammed [Plaintiff's] hand in the food slot." (*Id.*) According to Plaintiff, Defendant Sheldon had previously told him that he would punish him if he continued to file complaints. (*Id.*) Plaintiff avers that he "suffered swelling and pain on the side of his face

and head and headaches for 3 days," and "pain, swelling, and stiffness in [his] hand for 2 weeks." (*Id.*)

Plaintiff goes on to allege that on December 27, 2020, Defendant Burggren and four other officers, all of whom were in riot gear, used excessive force against him by spraying riot gas into his cell through the food slot, entering the cell, and pinning him to the ground before placing him in restraints. (*Id.*, PageID.5.) He avers that on February 17, 2021, he was found not guilty regarding a misconduct issued for an alleged assault on staff, but that Defendant Scott taped a sign stating "shower restriction" to his cell door. (*Id.*) This restriction was "immediately enforced without a hearing on the matter." (*Id.*) Plaintiff grieved the issue, and Defendant Burggren responded that the restriction had been approved by the Deputy Warden. (*Id.*, PageID.6.) Finally, Plaintiff asserts that on March 13, 2021, he was standing at his cell door talking to another prisoner when Defendant Wells, while making rounds, opened his food slot, sprayed him with pepper spray, and told him to stop eating glass. (*Id.*) Plaintiff states that he was "never eating glass," and that this was a lie created by Defendant Wells to retaliate against Plaintiff for exercising his due process rights, resulting in a not guilty finding at the misconduct hearing, and for writing grievances regarding the shower restriction. (*Id.*) Plaintiff suggests that because all Defendants work on the unit, their "routine pattern of retaliatory acts was orchestrated." (*Id.*, PageID.7.)

Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages. (*Id.*, PageID.8.)

**II. Misjoinder**

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action: "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the

3

alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party."

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .
>
> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice & Procedure Civil* § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), *and Garcia v. Munoz*, No. 08-1648, 2008 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also United States v. Mississippi*, 380 U.S. 128, 142–43 (1965) (joinder of defendants is permitted by Rule 20 if both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778 (internal quotation omitted). When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "'the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the

4

defendants were at different geographical locations.'" *Id.* (quoting *Nali v. Mich. Dep't of Corr.*, No. 07-10831, 2007 WL 4465247, at *3 (E.D. Mich. Dec. 18, 2007)).

Permitting the improper joinder in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004). Under the PLRA, a prisoner may not commence an action without prepayment of the filing fee in some form. *See* 28 U.S.C. § 1915(b)(1). These "new fee provisions of the PLRA were designed to deter frivolous prisoner litigation . . . 'by making all prisoner[] [litigants] . . . feel the deterrent effect created by liability for filing fees.'" *Williams v. Roberts*, 116 F.3d 1126, 1127–28 (5th Cir. 1997) (quoting *Jackson v. Stinnett*, 102 F.3d 132, 136–37 (5th Cir. 1996)). The PLRA also contains a "three-strikes" provision requiring the collection of the entire filing fee after the dismissal for frivolousness, etc., of three actions or appeals brought by a prisoner proceeding in forma pauperis, unless the statutory exception is satisfied. 28 U.S.C. § 1915(g). The "three strikes" provision was also an attempt by Congress to curb frivolous prisoner litigation. *See Wilson v. Yaklich*, 148 F.3d 596, 603 (6th Cir. 1998).

The Seventh Circuit has explained that a prisoner like plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .
>
> A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D

5

> failed to pay a debt, and E infringed his copyright, all in different transactions—should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168–69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA); *Patton v. Jefferson Corr. Ctr.*, 136 F.3d 458, 464 (5th Cir. 1998) (declining to allow "litigious prisoners [to] immunize frivolous lawsuits from the 'three strikes' barrier by the simple expedient of pleading unexhausted habeas claims as components of § 1983 suits"); *Shephard v. Edwards*, No. C2-01-563, 2001 WL 1681145, at *1 (S.D. Ohio Aug. 30, 2001) (declining to consolidate prisoner's unrelated various actions so as to allow him to pay one filing fee, because it "would improperly circumvent the express language and clear intent of the 'three strikes' provision"); *Scott v. Kelly*, 107 F. Supp. 2d 706, 711 (E.D. Va. 2000) (denying prisoner's request to add new, unrelated claims to an ongoing civil rights action as an improper attempt to circumvent the PLRA's filing fee requirements and an attempt to escape the possibility of obtaining a "strike" under the "three strikes" rule).  To allow Plaintiff to proceed with improperly joined claims and defendants in a single action would permit him to circumvent the PLRA's filing fee provisions and allow him to avoid having to incur a "strike" for purposes of Section 1915(g), should any of his claims turn out to be frivolous.  Courts are therefore obligated to reject misjoined complaints.  *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011).

The Court, therefore, will look to the first named Defendant and the earliest clear factual allegations involving that Defendant to determine which portion of the action should be considered related.  Here, Plaintiff names Defendant Sheldon as the first Defendant in the caption of his complaint (ECF No. 1, PageID.1), and in his factual allegations listing the Defendants (*id.*,

6

PageID.4).[1]  Plaintiff's factual allegations involving Defendant Sheldon assert that he used excessive force against him on November 17, 2020, by yanking him by the arm, striking him on the side of his face and head, and slamming the food slot on his hands.  (*Id.*, PageID.4.)  Plaintiff also suggests that Defendant Sheldon did so to retaliate against him for grievances and complaints he had previously submitted.  (*Id.*)

The conduct by Defendants Burggren, Scott, and Wells is not transactionally related to Plaintiff's claims against Defendant Sheldon, beyond a sweeping allegation that Defendants' allegedly retaliatory acts were "orchestrated" because they all work on the same unit.  (*Id.*, PageID.7.)  Plaintiff cannot manufacture proper joinder out of a conclusory allegation of conspiracy.  A civil conspiracy under Section 1983 is "an agreement between two or more persons to injure another by unlawful action."  *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)).  The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff.  *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011).  Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 565-66 (2007) (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of

---

[1] The analysis of joinder must start somewhere.  Joinder of parties would seem, necessarily, to start with the first-named party because joinder of parties is not an issue until an additional party is named.  By accepting the first-named party as the foundation for the joinder analysis, the Court is considering the issue of joinder of parties as Plaintiff has presented it in his complaint.

7

conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003).

Here, Plaintiff's allegations of conspiracy are conclusory and speculative. His allegations, viewed in the light most favorable to him, describe at least three discrete sets of facts that occurred over a period of five months. Plaintiff has provided no allegations establishing a link between the alleged conspirators or any agreement between them. Rather, he relies entirely on an attenuated inference from the facts that Defendants worked on the same unit and that he has been disciplined by or subjected to objectionable treatment by them in various circumstances. Such allegations, while hinting at a "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. Although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009). It is far more likely that the various incidents were unrelated; accordingly, Plaintiff fails to state a plausible claim of conspiracy. Therefore, his conclusory claim of conspiracy cannot provide a link between the various sets of allegations that would render his claims beyond November 17, 2020, properly joined.

Because the Court has concluded that Plaintiff has improperly joined Defendants Burggren, Scott, and Wells to this action, the Court must determine an appropriate remedy. Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." *Id.* Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572–73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable

nondiverse party to be dropped at any time . . . .'") (quoting *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989)); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *Carney v. Treadeau*, No. 2:07-cv-83, 2008 WL 485204, at *2 (W.D. Mich. Feb. 19, 2008); *Coalition to Defend Affirmative Action v. Regents of Univ. of Mich.*, 539 F. Supp. 2d 924, 940 (E.D. Mich. 2008), rev'd on other grounds at 701 F.3d 466 (6th Cir. 2012); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845. Gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846–47.

In this case, Plaintiff brings causes of action under 42 U.S.C. § 1983. For civil rights suits filed in Michigan under Section 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(2); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996).

9

The statute of limitations, however, is subject to tolling.  The Sixth Circuit has recognized that, in prisoner civil rights actions, the statute of limitations is tolled for the period during which a plaintiff's available state administrative remedies were being exhausted.  *See Brown v. Morgan*, 209 F.3d 595, 596–97 (6th Cir. 2000).

> The Prison Litigation Reform Act amended 42 U.S.C. § 1997e to provide:  "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a) (1999) . . . .  This language unambiguously requires exhaustion as a mandatory threshold requirement in prison litigation.  Prisoners are therefore prevented from bringing suit in federal court for the period of time required to exhaust "such administrative remedies as are available."  For this reason, the statute of limitations which applied to Brown's civil rights action was tolled for the period during which his available state remedies were being exhausted.

*Id.* at 596 (citing *Harris v. Hegmann*, 198 F.3d 153, 157–59 (5th Cir. 1999) (per curiam), and *Cooper v. Nielson*, 194 F.3d 1316, 1999 WL 719514 (9th Cir. 1999)).  The Sixth Circuit noted that, because it could not determine when the period of exhaustion expired, the appropriate remedy was to remand the case to the District Court to "consider and decide the period during which the statute of limitations was tolled and for such other proceedings as may be necessary."  *Id.* at 597.  Furthermore, "Michigan law provides for tolling of the limitations period while an earlier action was pending which was later dismissed without prejudice."  *Kalasho v. City of Eastpointe*, 66 F. App'x 610, 611 (6th Cir. 2003).

Plaintiff alleges that Defendants Burggren, Scott, and Wells engaged in conduct in December 2020, February 2021, and March 2021.  Whether or not Plaintiff receives the benefit of tolling during the administrative exhaustion period, *Brown*, 209 F.3d at 596, and during the pendency of this action, *Kalasho*, 66 F. App'x at 611, Plaintiff has sufficient time in the limitations period to file new complaints against Defendants Burggren, Scott, and Wells, and he will not suffer gratuitous harm if these Defendants are dismissed.

10

Accordingly, the Court will exercise its discretion under Rule 21 and dismiss Defendants Burggren, Scott, and Wells without prejudice to the institution of new, separate lawsuits against them. *See Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997) ("In such a case, the court can generally dismiss all but the first named plaintiff without prejudice to the institution of new, separate lawsuits by the dropped plaintiffs"); *Carney*, 2008 WL 485204, at *3 (same). If Plaintiff wishes to proceed with his dismissed claims against any Defendant, he shall do so by filing new civil actions on the forms provided by this Court, *see* W.D. Mich. LCivR 5.6(a), and paying the required filing fee or applying in the manner required by law to proceed *in forma pauperis*.[2]

### III. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted

---

[2] As fully discussed in this opinion, Plaintiff is cautioned that he must limit all future actions to Defendants and claims that are transactionally related to one another. The Court may, in its discretion and without further warning, dismiss any future complaint, or part thereof, Plaintiff files that contains claims that are misjoined.

unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under Section 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Excessive Force

As noted *supra*, Plaintiff alleges that Defendant Sheldon used excessive force against him on November 17, 2020. (ECF No. 1, PageID.4.) The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous," nor may it contravene society's "'evolving standards of decency.'" *See Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981) (quoting *Trop v. Dulles*, 356 U.S. 86, 101 (1958)). The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "'involve the unnecessary and wanton infliction of pain.'" *Rhodes*, 452 U.S. at 346 (quoting *Gregg v. Georgia*, 428 U.S. 153, 183 (1976)). Among unnecessary and wanton inflictions of pain are those that are "'totally without penological justification.'" *Id.*

But not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (holding that "[n]ot every push or shove . . . violates a prisoner's constitutional rights") (internal quotations omitted). On occasion, "[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law." *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002) (citing *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)), *quoted in Cordell v. McKinney*, 759 F.3d 573, 580–81 (6th Cir. 2014). Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (internal quotation marks omitted); *Bailey v. Golladay*, 421 F. App'x. 579, 582 (6th Cir. 2011).

There is an objective component and a subjective component to an Eighth Amendment claim. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). First, "[t]he subjective component focuses on the state of mind of the prison officials." *Williams*, 631 F.3d at 383. We ask "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9 (internal quotations omitted). The objective component requires a "contextual" investigation, one that is "responsive to 'contemporary standards of decency.'" *Id.* at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). While the extent of a prisoner's injury may help determine the amount of

13

force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9. "Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Id.*

Here, Plaintiff maintains that on November 17, 2020, Defendant Sheldon was escorting him back to his cell from a COVID-19 test when he began to yank on his arm and hand, shoved him into the cell, and then reached in to strike him on the side of his face and head. (ECF No. 1, PageID.4.) Plaintiff also avers that when he placed his hands on the food slot to be uncuffed, Defendant Sheldon slammed the food slot on his hands. (*Id.*) Plaintiff maintains he suffered swelling, pain, and headaches from this alleged use of force. (*Id.*) From these allegations, the Court concludes that Plaintiff has sufficiently stated an Eighth Amendment excessive force claim against Defendant Sheldon at this time.

### B.  Retaliation

Plaintiff also suggests that, at some point, during prior verbal confrontations, Defendant Sheldon threatened to punish him if Plaintiff continued to file complaints. (ECF No. 1, PageID.4.) Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the

14

defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of a nonfrivolous prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Here, however, Plaintiff provides no facts regarding the complaints and grievances he previously submitted. Without such facts, Plaintiff has not sufficiently alleged that he was engaged in protected conduct.

Moreover, to establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original). Here, Plaintiff alleges that on November 17, 2020, Defendant Sheldon used excessive force against him while escorting him back to his cell after a COVID-19 test. (ECF No. 1, PageID.4.) The use of excessive force clearly qualifies as adverse action for purposes of a retaliation claim. Plaintiff, therefore, has sufficiently alleged that Defendant Sheldon subjected him to adverse action.

With respect to the third prong, it is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under

§ 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening) (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)). In some circumstances, temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004).

Here, Plaintiff merely alleges the ultimate fact of retaliation. He alleges no facts from which the Court could reasonably infer that Defendant Sheldon's actions were motivated by any protected conduct. As noted *supra*, Plaintiff has not sufficiently alleged facts suggesting that he was even engaged in protected conduct. While Plaintiff avers that Defendant Sheldon threatened to punish him if he kept submitting complaints, he fails to provide facts indicating when Defendant Sheldon allegedly made that threat. Plaintiff has not presented any facts whatsoever to support his conclusion that Defendant Sheldon used excessive force against him because of his complaints. In other words, Plaintiff offers no facts to support the inference that there is any connection between the use of excessive force and any protected conduct by Plaintiff. The vague threat of unknown date does not suffice. The Court, therefore, will dismiss Plaintiff's First Amendment retaliation claim against Defendant Sheldon.

**Conclusion**

Having reviewed Plaintiff's complaint under Rule 21 of the Federal Rules of Civil Procedure, and concluded that certain parties are misjoined, the Court will drop as parties Defendants Burggren, Scott, and Wells and dismiss without prejudice Plaintiff's claims against them.  Having conducted the review required by the Prison Litigation Reform Act, the Court will dismiss Plaintiff's First Amendment retaliation claim against Defendant Sheldon for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  Plaintiff's Eighth Amendment excessive force claim against Defendant Sheldon remains in the case.

An order consistent with this opinion will be entered.


Dated: January 26, 2022                                     /s/ Sally J. Berens
                                                            SALLY J. BERENS
                                                            U.S. Magistrate Judge